IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Respondent,               No. CR S-97-0017 FCD KJM P

    vs.

LEWIS TAM,

        Movant.                  FINDINGS AND RECOMMENDATIONS

                           /

        Movant, a federal prisoner proceeding pro se, asks that the court vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Movant stands convicted on four separate counts: (1) conspiracy to commit mail fraud and transportation of stolen goods in foreign commerce (18 U.S.C. §§ 371, 1341 & 2314); (2) mail fraud (18 U.S.C. § 1341); (3) transportation of stolen property in foreign commerce (18 U.S.C. § 2314); and (4) conspiracy to launder money (18 U.S.C. § 1956(h)). On June 7, 1999, movant was ordered to serve concurrent sentences of sixty months each in the Federal Bureau of Prisons for the first two counts, and ninety-seven months each for the last two counts.[1]

/////

---

[1] The counts were numbered 1, 4, 8 and 10, respectively, in the third superseding indictment.

1

I. Background

Movant appealed his convictions and sentences to the Ninth Circuit Court of Appeals. In its opinion affirming movant's convictions and sentences, the Ninth Circuit summarized the factual and procedural history of this case as follows:

> Defendants Tam, Ng, and Giang were part of a car purchasing and insurance fraud scheme. The scheme, which took place during 1994 and 1995, was devised by Ken Mak, Norman Kuang, and Kevin Tsuming Yin. [fn] Defendants Tam, Ng, and Giang were middle-tier members of the conspiracy who recruited "straw buyers." The straw buyers would purchase or lease luxury vehicles with a small down payment provided for them by organizing members of the conspiracy. Car theft and loss insurance were also purchased on each vehicle. After taking possession of the vehicles from the dealership, the straw buyer would turn the car over to the person who had recruited him to make the purchase. The recruiters would then take the car to Los Angeles and deliver it to co-conspirator Yin. Yin would arrange for the shipment of the vehicle, via commercial shipping line, from the port of Los Angeles to Hong Kong. After the car was in transport to Hong Kong, the straw buyer would falsely report the car stolen and file a false theft claim with the insurance company.
>
> The end result of the scheme was that the insurance company would pay a claim to the company that financed the purchase of the vehicle and would reimburse some or all of the down payment money to the straw buyer. This reimbursement was the money the straw buyer was permitted to keep, and thus his or her incentive for making the straw purchase. Once the vehicle reached Hong Kong, the car would then be smuggled into mainland China where it would be sold for two or three times its original value.
>
> To facilitate the scheme, it was necessary to bring money into the United States to pay for the associated costs. This included the money paid to the middlemen/recruiters and straw buyers, the cost of shipping the cars to Hong Kong, as well as money paid to various members of the conspiracy for their roles in the operation. This money was brought into the United States by Ken Mak, primarily by wire transfers from Hong Kong banks. The money was transferred into various banks in Los Angeles and two accounts in Sacramento. The money in the Los Angeles bank accounts was controlled by Ken Mak and Kevin Tsuming Yin. The Sacramento accounts were controlled by defendant Tam and Ng (one account each).
>
> As the scheme evolved, some of the straw buyers recruited others to participate in the scheme both as straw buyers and as middlemen/recruiters. Defendants Tam, Ng, and Giang started out

as straw buyers before becoming recruiters.  According to the government, Tam and Ng became even more actively involved in the scheme, assuming more prominent positions in the conspiracy.  Both Tam and Ng helped transport cars to Los Angeles and acted as conduits for money coming from Ken Mak and Norman Kuang and going to the recruiters and straw buyers.

All told, approximately 112 automobiles were obtained by the conspirators and illegally exported to Hong Kong.  Approximately $2,300,000 was wire-transferred from Ken Mak into the various U.S. bank accounts.  Additionally, on at least one occasion, Mak physically brought approximately $100,000 of U.S. currency into Los Angeles.

The indictment in this case was filed on July 9, 1998 and charged several people, including defendants Ng, Tam, and Giang with (1) conspiracy to commit mail fraud and to transport stolen cars in foreign commerce (18 U.S.C. §§ 371, 1341, 2314), (2) mail fraud (18 U.S.C. § 1341), and (3) transporting stolen cars in foreign commerce (18 U.S.C. § 2313).  It also charged defendants Ng and Tam with conspiring to launder money.  18 U.S.C. § 1956(h).

Defendants Ng, Tam, and Giang went to trial on February 22, 1999.  At the close of the government's case, Ng and Tam made Rule 29 motions to dismiss based on the failure of the indictment to allege an overt act in count ten's money laundering conspiracy charge.  The motion was denied.  Following the joint trial, the jury rendered guilty verdicts against all defendants on all counts.

At sentencing, Tam received a term 97 months; Ng a term of 60 months; and Giang a term of 41 months.  Although Ng and Tam's offense level (29) and criminal history (I) were identical, the district court departed downward four levels for defendant Ng on the basis that he was the sole remaining parent of two small children.

----------------------

[fn] Mak and Kuang are fugitives.  Yin, a cooperating witness, is serving an eight-year state sentence for his part in this offense.

U.S. v. Tam, 240 F.3d 797, 800-01 (9th Cir. 2001).

/////

/////

/////

/////

## II. Arguments And Analysis

### A. Indictment–Failure to State an Offense

While it is difficult to tell, it appears that movant's first claim is that the indictment failed to charge an offense under 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h), thus rendering his conviction for conspiracy to launder money invalid. Motion filed January 28, 2002 (Mot.) at 2-4. Section 1956(h) reads:

> Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

Section 1956(a)(2)(A) identifies a person who launders money, in part, with reference to four elements, identified below by bracketed numbers:

> [1] Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer [2] a monetary instrument or funds [3] from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside of the United States–
>
> [4] (A) with the intent to promote the carrying on of specified unlawful activity. . .

In the operative indictment, respondent alleges in count 10 that [1] movant and others agreed to transmit and transfer funds [3] from Hong Kong, to bank accounts inside the United States [4] with the intent of promoting mail fraud and transportation of stolen property in foreign commerce. Answer, Ex. A at 12:8-13:1. Respondent identifies movant's Bank of America account and [2] funds deposited into the account that were later allegedly used by movant to commit mail fraud, as alleged in Count 4, and transportation of stolen property in foreign commerce as alleged in Count 8. Answer, Ex. A at 10:16-12:7, 16:21-17:21.

The allegations found in count ten of the operative indictment adequately charge an offense under 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h), as respondent alleges facts sufficient

to support all elements of the offense of conspiracy to launder money.[2]  Accordingly, movant's first claim must be rejected.

B.  Fifth Amendment Due Process Violation

In movant's second and third claims, he challenges his sentence for conspiracy to launder money.  The gist of movant's arguments appears to be that he should not have been held responsible for the entire scope of the money laundering scheme at sentencing.  Mot. at 4-15.  Movant raised this argument on direct appeal.  The Ninth Circuit found as follows:

> In sentencing Tam and Ng on the conspiracy to commit money laundering count, the district court relied upon their respective presentence reports ("PSR").  Both of their PSRs supplied facts supporting a conclusion that the defendants knew or could have reasonably foreseen the full amount of money wire transferred and brought into the United States by Ken Mak; approximately $2,300,000.  This finding resulted in a six level increase over the base offense level of 23 contained in United States Sentencing Guidelines Manual § 2S1.1 (1998).
>
> At sentencing, the government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence.  *United States v. Romero-Rendon*, 220 F.3d 1159, 1160 (9th Cir. 2000).  We review de novo a district court's compliance with Federal Rule of Criminal Procedure 32.  *United States v. Carter*, 219 F.3d 863, 866 (9th Cir. 2000).  The district court's application of the Sentencing Guidelines we review de novo.  *Id*.
>
> A district court's resolution of disputed evidence related to sentencing is governed by Rule 32(c)(1), which reads as follows:
>
>> At the sentencing hearing . . . [f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controversial matter will not be taken into account in, or will not affect, sentencing.
>
> Our precedent requires "strict compliance" with Rule 32.  *United States v. Houston*, 217 F.3d 1204, 1207 (9th Cir. 2000).  We

---

[2]  It appears movant's argument that count ten did not charge an offense is based on the faulty assumption that respondent had to charge that movant acted in furtherance of the conspiracy.  See, e.g., Mot. ¶ 10; Traverse at 1-2.  As noted by the Ninth Circuit Court of Appeals in the opinion concerning movant's direct appeal, the money laundering conspiracy statute does not require an indictment to allege an "overt act."  Tam, 240 F.3d at 802.

> adopted this rule because "resolving factual objections to the PSR on the record ensures meaningful appellate review of the sentence." *Carter*, 219 F.3d at 866-67. We hold that as to both defendants, the district court complied with Rule 32.
>
> Prior to sentencing, both Tam and Ng objected to the six level increase recommended by their PSRs. They argued that they were responsible only for the account that they each individually controlled, or in the alternative, for the cumulative amount of the two accounts (totaling approximately $364,000, which would have resulted in a three level increase). They both disputed the facts in the PSR supporting the conclusion that they had knowledge of or could have reasonably foreseen the larger scope of the money laundering scheme.
>
> In sentencing both defendants, the district court relied upon the defendants' PSRs and specifically adopted the findings contained therein. In doing so, the district court indicated its awareness of the defendants' challenges to the statements in the PSR and made the specific findings necessitated by Rule 32. *See Houston*, 217 F.3d at 1209 (concluding that there was a Rule 32 violation by specifically noting that the district court had not adopted the PSR as its own findings). The facts in the defendants' PSR are sufficient to support the district court's finding that the government met its burden of establishing, by a preponderance of the evidence, that the defendants could have reasonably foreseen the full scope of the money laundering conspiracy.

Tam, 240 F.3d at 803-04.

> More generally, as relevant to this case, the Ninth Circuit has held:
>
> When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.

United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000). The claims thus litigated become law of the case. Id.

To the extent movant challenges his sentence for conspiracy to launder money on the grounds that the trial court should not have considered the full $2.3 million scope of the money laundering conspiracy in sentencing movant, movant's argument is barred by his prior direct appeal.

Movant also appears to challenge whether the full scope of the scheme actually did amount to $2.3 million. Specifically, movant asserts that certain laundered funds were

6

1  counted twice in arriving at the $2.3 million total. Mot. at 6-7. However, movant's assertions
2  are vague and he fails to point to any evidence in the record showing that funds were counted
3  twice.[3]

4      In all other respects, movant's second and third claims are too vague to afford
5  relief.

6    C.  Double Jeopardy

7      In his fourth claim, movant claims that his convictions for both conspiracy to
8  commit mail fraud and to transport stolen cars in foreign commerce under 18 U.S.C. §§ 371,
9  1341 and 2314, and conspiracy to launder money under 18 U.S.C. § 1956(h) constitute a
10 violation of the Double Jeopardy clause of the Fifth Amendment because both convictions arose
11 from the same grand scheme to steal cars and export them to Hong Kong. Mot. at 16-17.

12     The Double Jeopardy Clause of the Fifth Amendment prohibits multiple
13 punishments for the same offense. U.S. v. Arlt, 252 F.3d 1032, 1035 (9th Cir. 2001). Under
14 Blockburger v. U.S., 284 U.S. 299, 303-04 (1932), a person punished for two offenses has not
15 been punished twice for the same offense if each offense requires proof of an element that the
16 other does not.

17     As noted above, conspiracy to launder money requires that respondent prove an
18 agreement to transport, transmit, or transfer funds into the country, or attempt the same, in
19 furtherance of some unlawful act. 18 U.S.C. §§ 1956(a)(2)(A) & 1956(h). The prosecution need
20 not prove any of these elements to obtain a conviction for conspiracy to commit mail fraud or
21 conspiracy to transport stolen cars in foreign commerce. 18 U.S.C. §§ 371, 1341 & 2314. In
22 order to prove conspiracy to commit mail fraud, respondent must show there was an agreement to

---

[3] Movant asks that he be allowed to discover bank records in order to check whether laundered funds were counted accurately. Mot. at 5, 7. Movant fails to provide any reason to believe that any additional bank records would contradict evidence presented by the government, thereby rendering any discovery of additional bank records nothing more than an impermissible "fishing expedition." See Calderon v. United States D. for the Northern District of California, 98 F.3d 1102, 1106 (9th Cir. 1996).

7

defraud the U.S. Postal Service, or some other interstate mail carrier. 18 U.S.C. §§ 371 & 1341. To prove conspiracy to transport stolen cars in foreign commerce, respondent must show an agreement to transfer stolen cars out of the country. 18 U.S.C. §§ 371 & 2314. None of these elements need be proven by respondent to obtain a conviction for conspiracy to launder money. Accordingly, movant's convictions for conspiracy to commit mail fraud and to transport stolen cars in foreign commerce under 18 U.S.C. § 371, 1341 & 2314, and conspiracy to launder money under 18 U.S.C. § 1956(h), do not violate the Double Jeopardy Clause of the Fifth Amendment.

    D.  Sixth Amendment: Apprendi

Movant's fifth claim is that his sentences for mail fraud, transportation of stolen property in foreign commerce and conspiracy to launder money violate Apprendi v. New Jersey, 530 U.S. 466 (2000). Mot. at 17. In Apprendi, the Supreme Court found that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." Id. at 490. The maximum statutory penalties for mail fraud, transportation of stolen property in foreign commerce and conspiracy to launder money are 5 years,[4] 10 years and 20 years respectively. 18 U.S.C. §§ 1341, 1956(a)(2)(a), 1956(h), 2314. Movant was sentenced to 60 months for mail fraud, 97 months for transportation of stolen property in foreign commerce and 97 months for conspiracy to launder money.[5] Therefore, he was not sentenced in excess of the statutory maximums and his sentence does not violate Apprendi. See U.S. v. Hernandez-Guardado, 228 F.3d 1017, 1026-27 (9th Cir. 2000).

/////

---

[4] In 2002, after movant's conviction, the maximum penalty for mail fraud under 18 U.S.C. § 1341 was increased to 20 years.

[5] As the Ninth Circuit noted on direct appeal, the district court followed the recommendation in the presentence investigation report (PSR), which sets forth these sentences by count. Transcript of June 7, 1999 Sentencing at 41:22-24. The undersigned has reviewed the PSR in chambers.

### E. Sixth Amendment: Right To Testify

In his sixth claim, movant makes the cursory claim that he was never informed by his trial attorney that he had the right to testify at trial. Mot. at 17. In U.S. v. Nohara, 3 F.3d 1239, 1243-44 (9th Cir. 1993), the Ninth Circuit found the defendant, who claimed his trial attorney did not tell him he had the right to testify, waived any claim based on that allegation, including ineffective assistance of counsel, as the defendant did not inform the trial court of his desire to testify. Movant fails to point to anything suggesting he informed the trial court that he wanted to testify. Based on Nohara, movant's "right to testify" claim is waived.

### F. Ineffective Assistance Of Counsel

Finally, movant claims he was subjected to ineffective assistance of trial and appellate counsel. Mot. at 18-19. The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court then must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

#### 1. Claims Asserted Here

Movant argues he was subjected to ineffective assistance of trial and appellate counsel because the claims he makes in this petition were not presented at trial or on appeal. Because all of movant's claims lack merit, as discussed above, movant has not shown his attorneys erred in any way in failing to raise them. See Strickland, 466 U.S. at 688.

      2. Plea Agreement

Movant claims, "[his] counsel of record Daniel Whaley failed to inform Tam's second counsel of record that a very favorable plea agreement was in the making to which prevented Tam from making an informed and voluntary decision to plead or go to trial. . . ." Mot. at 18. The Sixth Amendment demands that those who plead guilty receive effective assistance of counsel during the plea process. A deprivation of this Sixth Amendment right is shown where a habeas petitioner establishes: (1) his trial counsel's representation during the plea process fell below an objective standard of reasonableness demanded of attorneys in criminal cases, and (2) there is a reasonable probability, but for counsel's errors, petitioner would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 56-60 (1985). Movant fails to assert that a plea agreement he would have accepted was put forth by respondent. Therefore, he has not shown that there is a reasonable probability that movant would have pled guilty had it not been for any unreasonable actions of his first trial attorney.

      3. Charges

Movant claims his trial counsel was "constructively ineffective where counsel never informed Tam of the particulars of the elements of the statutes charged and failed to raise them in the District court for review on Appeal. . ." Mot. at 18. Movant fails to provide any facts suggesting the matters alleged are unreasonable or that movant's case was somehow prejudiced by counsel's actions or lack of action. This claim must be rejected.

III. <u>Conclusion</u>

For all the foregoing reasons, the court will recommend that movant's motion under 28 U.S.C. § 2255 be denied.

/////
/////
/////
/////

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Movant's 28 U.S.C. § 2255 motion be denied; and

2. The clerk of the court be directed to close the companion civil case No. S-02-0221 FCD KJM P.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 14, 2005.

UNITED STATES MAGISTRATE JUDGE

1
tam0017.257(a)